## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**NICHOLAS R. MURRAY,**

**Petitioner,**

**v.**                                    **Case No. 22-CV-0183-SEH-SH**

**DAVID LOUTHAN, Warden,[1]**

**Respondent.**

## OPINION AND ORDER

Petitioner Nicholas R. Murray ("Murray"), an Oklahoma prisoner

appearing through counsel, seeks federal habeas relief under 28 U.S.C. §

2254, asserting he is in state custody in violation of federal law pursuant to

the criminal judgment entered against him in Tulsa County District Court

Case No. CF-2016-4660. Specifically, Murray argues: i) he was denied his

Sixth Amendment right to confrontation of a witness; ii) he was denied his

Sixth Amendment right to ineffective assistance of trial counsel; iii) he was

denied his Fourteenth Amendment right to a fair trial when the prosecutor

engaged in misconduct; and iv) he was denied his Fourteenth Amendment

---

[1] Murray presently is incarcerated at the Lexington Correctional Center in
Lexington, Oklahoma, and David Louthan is the current warden of that
facility. The Court therefore substitutes David Louthan, Warden, in place of
Deon Clayton as party Respondent. *See* Rule 2(a), *Rules Governing Section
2254 Cases in the United States District Courts*. The Clerk of Court shall
note on the record this substitution.

right to a fair trial based on the cumulative effect of trial errors.  ECF Nos. 2 and 4.  Having considered Murray's Petition for Writ of Habeas Corpus [ECF No. 2] and Brief in Support of Petition ("Brief") [ECF No. 4], Respondent's Response to Petition for Writ of Habeas Corpus [ECF No. 9], Murray's Reply [ECF No. 11], the record of state-court proceedings provided by Respondent [ECF Nos. 9-1 through 9-6 and ECF No. 10], and applicable law, the Court finds and concludes that this matter can be resolved without an evidentiary hearing and that the Petition shall be denied.

## BACKGROUND

On February 7, 2019, a Tulsa County jury found Murray guilty of one count of "rape – first degree – victim under 14 years of age" and acquitted Murray of another count of "rape – first degree – victim under 14 years of age."[2]  ECF No. 10-14 at 102-04.[3]  On February 19, 2019, Murray was sentenced to twelve (12) years.  ECF No. 10-14 at 117.  The victim, A.T., was Murray's then thirteen-year-old neighbor.  ECF No. 10-6 at 16-17.

---

[2]  Each count stemmed from two separate alleged instances of rape by Murray against A.T.  *See* ECF No. 10-14 at 67-68, *see also* ECF Nos. 10-4 at 52 and 10-10 at 33.  The jury only convicted Murray of the Friday, August 28, 2015 incident, Count 2.  ECF No. 10-14 at 102-103.  Accordingly, the Court will only address the facts relevant to Count 2.

[3]  The Court's citations refer to the CM/ECF header pagination.

A.T. testified about her relationship with Murray.  *See* ECF No. 10-6 at 20-25.  She explained she had feelings for Murray, she trusted him and thought he was her first love.  *Id.* at 24-25.  She testified she spent time with Murray by himself "a few times[.]"  *Id.* at 18.  On August 28, 2015, a Friday during the school year, it was arranged for A.T. to babysit Murray's toddler-aged daughter.  *See id.* at 38.

A.T. testified she arrived in the morning to babysit, Murray's wife and Murray both left for work.  ECF No. 10-6 at 38.  Murray returned home thirty minutes later.  *Id.*  Murray and A.T. spent the day together with Murray's daughter.  *See id.* at 38-39.  During one of the daughter's naps, A.T. went to take a nap in Murray's bed, Murray lay next to her and the two had intercourse.  *Id.* at 42-44.  A.T. testified something came out of Murray's penis, it got on A.T.'s clothing and legs.  *Id.* at 44.  Murray instructed A.T. not to tell anyone.  *Id.* at 46.  A.T. remained at Murray's house until his wife or her mother got home.  *Id.* at 47.  Subsequently, A.T. disclosed the incident to her mother.  *See id.* at 47-48; ECF No. 10-5 at 2-4.  Her mother took her to have a sexual assault nurse examiner ("SANE") exam on August 31, 2015.  ECF No. 10-7 at 8; *see also* ECF No. 10-6 at 48.

Kathy Bell conducted the SANE exam.  ECF No. 10-7 at 8.  During the SANE exam, A.T. disclosed she had sex with Murray on August 28, 2015.  *Id.*

at 9.  She also reported Murray ejaculated on her clothing.  *Id.* at 10.  A.T.'s genital exam conducted as part of the SANE exam was "normal."  *Id.* at 106.

After the SANE exam, it was arranged for A.T. to be forensically interviewed on September 1, 2015.  ECF No. 10-7 at 30.  Paula Maker ("Maker"), the lead detective on the case, observed the forensic interview.  *Id.* She testified that during the forensic interview there was not a disclosure of sex and A.T. stated she made it up.  *Id.*

Based upon A.T.'s report during the SANE exam that Murray ejaculated on her clothing, Maker asked A.T.'s mother to obtain the clothing A.T. wore on Friday, August 28th.  ECF No. 10-7 at 31-32.  The clothing was retrieved, and serology testing was conducted.  *Id.* at 33.  The serology test results indicated there was seminal fluid on A.T.'s clothing.  *Id.*

Based upon the serology tests, a buccal swab from A.T. was obtained to conduct DNA analysis of A.T.'s clothing.  *See* ECF No. 10-7 at 33-34.  Maker also obtained a search warrant for Murray's DNA.  *Id.* at 35.  After obtaining the search warrant, investigators obtained a buccal swab from Murray.  *Id.* at 36.  DNA testing was conducted by Ivy Rabe ("Rabe").  *Id.* at 61-62.  Rabe testified the DNA analysis of A.T.'s clothing revealed "there was no DNA that couldn't be explained by [A.T. and Murray]."  *Id.* at 66.  Rabe further testified, Murray and A.T. accounted for all the DNA in the sample taken from A.T.'s clothing.  *Id.*  There was no "unknown DNA" found in the sample

4

taken from A.T.'s clothing. *Id.* at 67. Rabe testified there was a "strong result" for Murray's DNA on A.T.'s clothing. *See id.* at 67-68. Rabe explained:

> Q:   … And what about fraction B in item 3B?
> A:   A.T. was excluded and Nicholas couldn't be excluded. And I got a very strong statistic in the septillions – or septillions. … The stat I got from the maroon skirt, fraction B, we would have to test at random 73 septillion U.S. Caucasians, 14 septillion African-Americans, and 250 septillion Hispanics before we would expect to see the profile developed from fraction B on the skirt.
>
> ***
>
> Q:   And when you have a result that is that strong does that tell you anything else about the source of that DNA?
> A:   Other than we would have to test as many people as I just quoted before we would expect to see that profile. And if you think that there is a little over three million [sic] people in the U.S. and a little over seven and a half billion people on the planet, it is a strong indication for not excluding him.
> Q:   Would it be possible to get that strong of a profile from mere contact with the source of the seminal fluid?
> A:   I would guess not. A dry stain or just brushing up against something I would imagine would yield either a partial profile or maybe not a profile at all, but not that strong of one.

*Id.* at 67-69.

Murray testified in his own defense. *See* ECF No. 10-8 at 23-74; ECF No. 10-9 at 1-12. He presented a different version of events to the jury. At the time, Murray was working as a mechanic. ECF No. 10-8 at 30. He testified he and his wife, Elizabeth Alvarez, arranged for A.T. to watch their daughter on August 28, 2015. *Id.* at 46-48. That same day he had plans with his wife's

cousin, Julio Alvarez ("Julio"), to help make repairs to Julio's motorcycle. *Id.* at 50. The original plan was for Julio to bring his motorcycle to Murray's work for the repairs. *Id.*

Murray left for work the morning of August 28th, but shortly after received a phone call from A.T.'s mother upset about the babysitting arrangement. *Id.* at 49. As a result, he turned around during his commute to work, stopped at Home Depot to buy some plywood, arranged for Julio to now meet him at his home and returned home. *Id.* at 51-52. Upon arriving at home, Murray entered his home, heard his dogs barking and a bang at the back door and discovered A.T. in his marital bed. *Id.* at 53-54. He said A.T. went home after this encounter, he and Julio worked on the motorcycle until about 1:30 p.m. and Julio left around 2:00 or 2:30 that afternoon. *See id.* at 55-57. "Almost immediately as soon as Julio leaves" A.T. came back over to Murray's house. *Id.* at 57. Per Murray, A.T. disclosed she had invited her boyfriend over because she did not know Murray was going to be home so soon that morning. *See id.* at 57. Murray told A.T. he would give her until the end of the weekend to tell her mother about the boyfriend being over otherwise, he was going to tell A.T.'s mom. *Id.* at 58. Murray testified A.T. left the house after this exchange. *Id.* Murray also testified he had sex with his wife the morning of August 28th before leaving for work. *Id.* at 64.

6

Murray's wife and Julio, testified to corroborate portions of Murray's account. *See* ECF No. 10-9 at 12-25, 40-59.

As noted above, the jury found Murray guilty on one count of rape in the first degree. ECF No. 10-14 at 117.

## *DISCUSSION*

### I.   **Legal Standards**

A federal court has discretion to grant federal habeas relief to a prisoner who is in state custody pursuant to a final criminal judgment if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). But the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and as interpreted by the United States Supreme Court, significantly limit a federal court's discretion to grant habeas relief to a state prisoner.

"A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition." *Bland v. Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006); *see* 28 U.S.C. § 2254(b)(1)(A). When a state prisoner fairly presents a federal claim in state court and the state court adjudicates that claim on the merits, a federal court cannot grant

habeas relief as to that claim unless the prisoner first shows that the state court's decision as to that claim either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated by "the holdings" of the Supreme Court's "decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Thus, when § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision. *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008). If such law exists, and the state court has correctly identified that law, the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413). To establish that the state court's decision unreasonably applied the law, a petitioner "must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  In other words, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)).

Under § 2254(d)(2), a petitioner must show that the state court's decision rests on an unreasonable determination of the facts.  But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Instead, the reasonableness of a state court's factual determination also is measured by *Richter*'s fairminded-disagreement standard.  *Dunn v. Madison*, 583 U.S. 10, 13-14 (2017).  And "if [*Richter's*] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and that the federal court may not disturb the state court's decision "without identifying—let alone rebutting—all of the justifications" that may support that decision.  *Mays v. Hines*, 592 U.S. 385, 391-92 (2021) (per curiam).  In addition, when § 2254(d) applies, the federal court's review is limited to the

same record that was presented in state court unless and until the petitioner satisfies § 2254(d)'s demanding preconditions to relief, *Pinholster*, 563 U.S. at 185, and the federal court must presume the correctness of any state-court factual findings unless the petitioner presents clear and convincing evidence to rebut that presumption, 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)'s preconditions to relief, the federal court may then review the petitioner's federal claim *de novo. Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014). But, even on *de novo* review, a federal court must apply § 2254(e)(1)'s presumption of correctness to any state-court factual findings relevant to the federal claim. *Sumpter v. Kansas*, 61 F.4th 729, 750 (10th Cir. 2023). Moreover, even if the federal court determines that a constitutional error occurred, the court may not grant federal habeas relief unless the petitioner also "show[s] that the error had a "'substantial and injurious effect or influence'" on the outcome of his trial." *Davenport*, 596 U.S. at 126 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Applying these legal standards, the Court turns to Murray's claims.[4]

---

[4]  Murray requested "a full and fair evidentiary hearing as to any issues which involve facts disputed by the Respondent." ECF No. 4 at 65. But when § 2254(d)'s framework applies, as it does in this case, a federal habeas court must consider whether the petitioner has satisfied § 2254(d)(1)'s precondition to relief only by looking to the record that was presented in state court proceedings. *Pinholster*, 563 U.S. at 181 (holding "that review under §

## II.    Ground 1:  Confrontation Clause Violation

First, Murray claims that his Sixth Amendment right to confrontation was violated because Maker and Rabe testified concerning the results of serology testing of A.T.'s clothing, and the forensic examiner who conducted the serology testing did not testify.  ECF No. 4 at 20-23.  Murray alleges Maker and Rabe's testimony constituted inadmissible hearsay.  *See id.* at 28.

### A. The OCCA Decision

Murray's counsel did not object to Maker or Rabe's testimony as violating the Confrontation Clause at trial.  Therefore, on direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") reviewed for plain error.  ECF No. 9-5 at 3.  The OCCA concluded Murray's Sixth Amendment right was not violated.  *Id.* at 4-5.  Specifically, the OCCA ruled:

> The accused in a criminal prosecution has a constitutional right to cross-examine the witnesses against him.  *See Crawford v. Washington*, 541 U.S. 36, 61-62 (2004); U.S. Cont. amend. VI; Okla. Const. art. 2, § 20.  There is no dispute that the serology report is a testimonial statement for Sixth Amendment purposes.  *See Bullcoming v. New Mexico*, 564 U.S. 647, 655-68 (2011);

2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  "In all but these extraordinary cases, AEDPA 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'"  *Id.* (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)).  For the reasons discussed next, Murray has not demonstrated, as to any claim, that he can satisfy § 2254(d)'s preconditions to habeas relief.  And Murray does not argue, much less demonstrate, that he can make the showings necessary to obtain an evidentiary hearing under § 2254(e)(2).  For these reasons, the Court denies Murray's passing request for an evidentiary hearing.

> *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313-22 (2009); *Cuesta-Rodriguez v. State*, 2010 OK CR 23, ¶¶ 33-35, 241 P.3d 214, 227-28. However, neither Det. Maker nor Rabe were offered as witnesses to present the serology report. Nor was the serology report admitted as an exhibit at Appellant's trial. Rather, the challenged serology testimony of both Det. Maker and Rabe was foundational to show the effect the serology testing had on their respective actions in the case. This testimony was thus *not* hearsay as it was not offered for the truth of the matter asserted and consequently was not barred by the Confrontation Clause. 12 O.S. 2011, §§ 2801-2802, 2805; *Tryon v. State*, 2018 OK CR 20, ¶ 40, 423 P.3d 617, 632-33.

ECF No. 9-5 at 4. Murray argues this holding is based upon an unreasonable determination of the facts in light of the trial evidence. ECF No. 4 at 23.

## B. Analysis and Conclusion

The Sixth Amendment of the United States Constitution guarantees an individual accused of a criminal offense the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). "A defendant's confrontation rights are implicated by the admission of testimonial statements against the defendant, however, only when they are admitted to establish the truth of the matter asserted in the statement." *United States v. Pablo,* 696 F.3d 1280, 1287 (10th Cir. 2012).

Murray argues the OCCA's determination is "not a plausible reading" of the testimony, citing *Sharp v. Rohling*, 793 F.3d 1216, 1230 (10th Cir. 2015). ECF No. 4 at 25. Murray contends Maker and Rabe's testimony that the serology testing "revealed semen" and "tested positive for seminal fluid" was central to the State's prosecution, was emphasized during closing arguments, and was presented to the jury with no limiting instruction. ECF No. 4 at 24-25. Therefore, Murray contends, this testimony was offered to prove the truth of the matter asserted [*id.* at 25], and OCCA's determination of the facts was unreasonable. *Id.* at 23.

The Court disagrees with Murray's position. "Statements offered for the effect on the listener, however, are generally not hearsay." *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993). A review of Maker's testimony reveals she was called mainly to testify regarding the steps undertaken by her as the lead detective in the case. *See* ECF No. 10-7 at 23-39. The extent of her testimony regarding the serology testing is as follows:

> Q: Did you request testing to be done on that clothing?
> A: I requested a lab analysis for serology?
> Q: What is serology?
> A: It is bodily fluids. So looking for that bodily fluid on those clothing.
> Q: And as to the next step in your investigation, did the test reveal the presence of bodily fluids?
> A: **The test revealed semen.**
> Q: Okay. **So based on that, what did you do?**

> A:  With the semen you have to have a comparison.  So I needed a buccal swab from the victim and also a buccal swab from the defendant.

ECF No. 10-7 at 33 (emphasis added).  Maker testified only regarding the investigative steps she took based upon the serology results.  *Id.*

A review of Rabe's testimony reveals she was primarily called to testify regarding the results of the DNA testing.  *See* ECF No. 10-7 at 53-70.  The extent of Rabe's testimony regarding the serology testing is as follows:

> Q:  Why is serology conducted?
> A:  Again, there can be dozens of items of evidence collected on a case, and **it is just to help narrow the scope down of the items that are going to go on to DNA**.  And we choose the ones that are most likely to give us a probative sample.
> Q:  Okay.  Once serology is conducted what is the next step in the testing process?
> A:  **The technical leader gets the serology reports and then assigns a case to a DNA analyst**.

ECF No. 10-7 at 57 (emphasis added).

> Q:  Was DNA found on either the shirt or the skirt?
> A:  Both.
> Q:  Okay.  And was seminal fluid found on the skirt and the shirt?
> A:  In serology they tested for seminal fluid, but because those things are microscopic I can't for sure tell you that that is where my sample came from.  It came from the area that had been identified as being positive for seminal fluid.

ECF No. 10-7 at 64.  Rabe's testimony focused on the impact the serology testing had on her DNA testing and the steps she did or did not take based upon the serology testing.  Accordingly, the OCCA's determination is a plausible reading of the record.  Murray has failed to present clear and

14

convincing evidence to rebut the presumption of correctness of the OCCA's finding and has failed to establish that no fairminded jurist could reach the OCCA's conclusion.

### C. The OCCA's Alternate Decision

The OCCA also provided an alternative holding:

> Alternatively, assuming *arguendo* the evidence was offered to prove the truth of the matter asserted and thus a confrontation violation occurred, Appellant's defense at trial, which was premised on the victim's clothing having semen on them, negates his claim of plain error affecting his substantial rights.

> At trial, Appellant did not challenge the nature of the bodily fluid found on the thirteen-year-old victim's clothing. Rather, he disputed the manner in which semen got on her clothing, offering the jury plausible explanations that were consistent with his claim of innocence and his testimony. Appellant specifically contended his semen was transferred to the victim's clothing when she got into his marital bed after he had unprotected sex with his wife early that morning. Appellant further asserted that the victim had sex with someone else in his bed which may have accounted for some of the other seminal fluid found on the victim's clothing that was not tested. Resolute in his chosen trial defense, Appellant's correlative defense theories were introduced to the jury during opening argument.

> Appellant's entire defense was premised on the notion that the victim got in his marital bed shortly after he had sex with his wife. His defense theories accepted and actually promoted the serology results. Cross-examination of the serologist that performed the testing was therefore unnecessary to Appellant's defense theories. Any error was thus harmless beyond a reasonable doubt. *White v. State,* 2019 OK CR 2, ¶ 17, 437 P.3d 1061, 1068 (explaining plain error review is governed by *Chapman v. California*, 386 U.S. 18 (1967), where constitutional right implicated).

> For these reasons, we find there was no plain error from the admission of the challenged serology testimony. This claim is denied.

ECF No. 9-5 at 6-7. Murray claims this holding was contrary to or involved an unreasonable application of federal law and/or was otherwise based upon an unreasonable determination of the facts. ECF No. 4 at 23-24

### D. Analysis and Conclusion

The OCCA's decision was not unreasonable. After alternatively finding the existence of a Sixth Amendment error, the OCCA correctly identified the Supreme Court's review standard: harmless beyond a reasonable doubt. *See* ECF No. 9-5 at 7. It then determined the trial court's error was harmless beyond a reasonable doubt. *Id.*

As noted by the OCCA, beginning with opening arguments, Murray embraced the serology results. *See* ECF No. 10-4 at 71-72; *see also* ECF Nos. 10-7 at 72-73 and 10-8 at 2. Further, apart from the serology results, there was ample testimony that Murray's semen was on A.T.'s clothing. *See* ECF Nos. 10-6 at 44 (A.T. testified Murray ejaculated on her clothes and legs); 10-7 at 10 (Kathy Bell testified, during the SANE exam, A.T. disclosed Murray ejaculated on her skirt and shirt); 10-8 at 64 (Murray testified he had sex with his wife and "came on the bed" the morning of the incident); 10-8 at 54 (Murray testified he came home and found A.T. in his bed); 10-12 at 11-14 (Murray admitted pictures of A.T.'s stained clothing as exhibits).

Also, without the serology results, there was sufficient evidence supporting the jury's verdict. Murray had the opportunity to commit the crime and admitted to being at his home with A.T. the day of the rape. *See* ECF No. 10-8 at 57. A.T. testified she had sex with Murray and her testimony was corroborated by the account she provided the SANE examiner. *See* ECF Nos. 10-6 at 43-44 and 10-7 at 9. A.T. also disclosed the incident to her mother. *See* ECF No. 10-5 at 4. Photographs on A.T.'s phone suggested an inappropriate relationship between A.T. and Murray. ECF No. 10-12 at 2. A.T.'s mother testified she witnessed Murray hug A.T. when Murray was only wearing boxers. ECF No. 10-4 at 80-81. Considering all the evidence presented, the OCCA's determination was not an unreasonable application of *Chapman* nor did it rest on an unreasonable determination of the facts.

Regardless of which of the OCCA's holdings is considered, the OCCA's determination was reasonable. Habeas relief as to this claim is denied.

### III.    Ground 2: Ineffective Assistance of Trial Counsel

Next, Murray contends he was denied effective assistance of trial counsel in violation of his Sixth and Fourteenth Amendment rights. ECF No. 4 at 33. Murray points to three separate instances of ineffectiveness: i) failure to retain a defense expert to adequately investigate and counter the state's scientific evidence; ii) failure to seek suppression of Murray's DNA profile which was obtained in violation of his Fourth Amendment rights; and iii)

17

failure to object to testimonial hearsay regarding the results of the serology testing. ECF No. 4 at 33-57. The OCCA addressed each of these sub-propositions when it adjudicated Murray's claim.

## A. The OCCA's Decision: Failure to hire an expert

The OCCA considered Murray's first sub-proposition and concluded:

> Given the record evidence, trial counsel's decision not to retain an expert to counter the State's scientific evidence at trial was a reasonably strategic choice. *See Richter*, 562 U.S. at 111 ("*Strickland* does not enact Newton's third law for presentation of evidence, requiring every prosecution expert an equal and opposite expert from the defense."); *Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). Appellant's hindsight arguments outlining how the State's scientific evidence could have been combated by a forensic expert retained by the defense are unpersuasive. This Court "refuse[s] to review counsel's performance in the lens of hindsight." *Bench v. State*, 2018 OK CR 31, ¶ 195, 431 P.3d 929, 976. Appellant thus fails to show by clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to retain and utilize a forensic science expert.

ECF No. 9-5 at 10-11.

## i.    Analysis and Conclusion

Under clearly established federal law, the Sixth Amendment guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.  And the framework for assessing any such claim requires a reviewing court to consider (1) whether counsel performed deficiently and, if so, (2) whether counsel's deficient performance prejudiced the defendant.  *Id.* at 687.

A defendant can demonstrate deficient performance by showing that counsel's alleged acts or omissions were objectively unreasonable "under prevailing professional norms."  *Id.* at 687-88.  The *Strickland* Court recognized:

> In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.  In particular, what investigation decisions are reasonable depends critically on such information.

*Strickland*, 466 U.S. at 691.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

On the record presented, Murray cannot show the OCCA's adjudication of his first sub-proposition involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.

Murray first challenges the performance prong. Murray argues the OCCA's finding was an unreasonable determination "because there is no evidence in the record to support that defense counsel engaged in any decision-making whatsoever as to whether or not to retain a defense expert." ECF No. 4 at 35. Murray believes,

> Had counsel hired a forensic scientist, the defense would have been able to explain that the scientific evidence did not corroborate A.T.'s allegations. Critically, the serology evidence failed to prove seminal fluid was present on A.T.'s clothing, and the DNA evidence failed to prove that the source of Mr. Murray's DNA on A.T.'s clothing was his semen.

ECF No. 4 at 34.

Based on the circumstances that are present in the record, Murray placed himself at home with A.T. on August 28, 2015. *See* ECF No. 10-8 at 51-58. The record also reveals that both Murray and A.T. (regardless of which version of events are considered) place A.T. in Murray's bed with his semen. *See* ECF No. 10-6 at 44 (A.T. testified Murray ejaculated on her clothes and legs); ECF No. 10-8 at 64 (Murray testified he had sex with his wife and "came on the bed" the morning of the incident); ECF No. 10-8 at 54 (Murray testified he came home and found A.T. in his bed). Considering all the

circumstances and applying a "heavy measure of deference" to counsel's judgments, it was reasonable for defense counsel, based upon Murray's version of events, to not pursue a defense that was futile and maybe even harmful to Murray. The OCCA's determination that "trial counsel's decision not to retain an expert to counter the State's scientific evidence at trial was a reasonably strategic choice" was reasonable.

Murray also contends this Court should review *Strickland's* prejudice prong *de novo* because the OCCA did not address prejudice. ECF No. 4 at 36. However, having concluded the OCCA's performance determination was reasonable, the Court finds it unnecessary to consider the prejudice prong. ECF No. 4 at 36. *Strickland* counsels, "unless a defendant makes *both* showings, it cannot be said that the conviction … resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687 (emphasis added). Murray has not demonstrated the deficient performance prong. Therefore, he cannot prevail on his ineffective assistance of counsel claim regardless of the prejudice prong.

In sum, Murray failed to establish that no fairminded jurist could reach the OCCA's conclusion. The OCCA's decision was reasonable under the AEDPA and habeas relief as to this sub-proposition is denied.

## B. The OCCA's Decision:  Suppression of DNA profile

In his direct appeal, Murray argued trial counsel was ineffective for failing to seek suppression of the DNA profile because the affidavit used to obtain a search warrant for his buccal swab omitted material facts in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).  ECF No. 9-1 at 45-49.  Specifically, the affidavit impermissibly did not include the material fact that A.T. recanted her rape allegations against Murray during a forensic interview.  *Id.* at 48.  The OCCA held:

> Appellant fails to show Det. Maker recklessly omitted significant material or that including the material in the search warrant application would have undermined probable cause.  *See Smith v. State*, 2018 OK CR 4, ¶ 6, 419 P.3d 257, 260; *Wackerly v. State*, 2000 OK CR 15, ¶¶ 13-15, 12 P.3d 1, 9.  Reviewing the totality of the circumstances, including both allegations included in the affidavit and the recantation Appellant contends should have been included in the affidavit, there is no doubt but that upon being fully informed, the magistrate still would have had a substantial basis for concluding that probable cause existed.  *See Illinois v. Gates*, 462 U.S. 213 (1983) (The standard for review for the validity of a search warrant is the totality of the circumstances).  *See also Lynch v. State*, 1995 OK CR 65, ¶ 18, 909 P.2d 800, 804-05 (Our duty as a reviewing Court is simply "to ensure that the magistrate had a substantial basis for concluding that probable cause existed.").  Accordingly, we find the affiant's failure to inform the magistrate of the complained of omissions was not material to the finding of probable cause.
>
> Appellant has not shown the complained of omission was a fundamental piece of information which, if known to the issuing judge, would have precluded a finding of probable cause.  Appellant thus fails to show by clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing

to seek suppression of the buccal swab resulting in Appellant's DNA profile.

ECF No. 9-5 at 12-13.  Murray contends this conclusion was unreasonable.

ECF No. 4 at 49, 51.

### i.    Analysis and Conclusion

Like the OCCA, the Court first addresses whether the search warrant was issued in violation of Murray's constitutional rights.  In *Franks*, the Supreme Court held that a criminal defendant may challenge a facially sufficient affidavit for a search warrant on the ground that the police knowingly, intentionally or recklessly included false information.  *Franks*, 438 U.S. at 155–56.  The Tenth Circuit has extended the holding of *Franks* to "material omissions."  *See United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999) (citing *United States v. Kennedy*, 131 F.3d 1371, 1375 (10th Cir.1997); *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir.1990)).  Accordingly, it is a violation of a person's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an affidavit information which, if included, would undermine a finding of probable cause.  *Stewart*, 915 F.2d at 582-83.  If an affidavit is challenged based on a "material omission," the affidavit is examined to determine whether the affidavit would still give rise to probable cause for issuance of the warrant if the omitted information had been included.  *Stewart*, 915 F.2d at 583 n. 13.

Inclusion of the omitted information outlines the following situation: on August 31, 2015, thirteen-year-old A.T. disclosed to her mother that she had sex with their adult neighbor, Murray. ECF No. 9-2 at 36. Previously, the mother had witnessed A.T. and Murray hugging. *Id.* A.T. reported Murray had kept her home from school on August 28, 2015, and A.T. and Murray had sex that day. *Id.* During a SANE exam, A.T. disclosed she had sex with Murray on August 25, 2015, and August 28, 2015. *Id.* A serology test was completed on A.T.'s clothes which revealed seminal fluid on the clothing. *Id.*

On September 1, 2015, A.T. was forensically interviewed. ECF No. 9-2 at 37. A.T. reported she was babysitting Murray's child that day and she and Murray ended up "hanging out instead." *Id.* at 38. A.T. indicated there were pictures of Murray sleeping on the couch from August 31, 2015, and her mother found the pictures. ECF No. 9-2 at 37. A.T.'s mom "had ideas about the pictures and [A.T.] just went along with them. [A.T.] said she lied and that's why she was there." *Id.* A.T. reiterated multiple times throughout the forensic interview that she had lied to her mother. *See id.* at 37-39. A.T. also revealed she had sex with a boy from school and "thought her mom would be madder about the guy from school because she didn't know him. She didn't know anything would come from her lie about [Murray]." *Id.* at 39. A.T. also informed the forensic interviewer she trusts Murray and feels comfortable around him. *Id.* at 40.

"In determining whether probable cause exists to issue a warrant, the issuing judge must decide whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grimmett*, 439 F.3d 1262, 1270 (10th Cir. 2006). Furthermore, "[t]he omitted information must be so probative as to negate probable cause." *Stewart*, 915 F.2d at 583 n. 13. Even considering A.T.'s recantation, the following information in the affidavit supports a finding of probable cause: i) the crime alleged; ii) the age of the victim; iii) the age of the perpetrator; iv) the relationship between the victim and Murray; v) Murray had the opportunity to commit the crime; vi) the victim implicated Murray on two separate occasions to two separate people before recanting; and  vii) the clothes A.T. wore on August 28, 2015, when she spent the day (or a portion of the day) at Murray's home, revealed seminal fluid on them. Accordingly, the OCCA's conclusion that "the affiant's failure to inform the magistrate of the complained of omissions was not material to the finding of probable cause" is not an unreasonable determination of the facts or an unreasonable application of the law to the facts. *See* ECF No. 9-5 at 12. The omitted information does not negate probable cause. It thus follows defense counsel's performance was not deficient for failing to move to suppress the DNA. The OCCA did not unreasonably apply *Strickland* to the facts of the

case or rest its decision on an unreasonable determination of the facts.

Habeas relief as to this sub-proposition is denied.

### C. The OCCA's Decision:   Failure to object to hearsay testimony

Third, Murray contends "[t]rial counsel was ineffective in failing to object to the obvious Confrontation Clause violation resulting from Maker and Rabe's presentation of the testimonial hearsay."  ECF No. 4 at 55.  The OCCA addressed this sub-proposition and held:

> We addressed and rejected Appellant's confrontation claim in Proposition I on alternative grounds.  In light of that analysis, Appellant fails to show deficient performance and/or prejudice based upon trial counsel's failure to object to the challenged testimony.  Trial counsel thus was not ineffective for failing to raise this meritless claim.  *See Logan v. State*, 2013 OK CR 2, ¶ 11, 293 P.3d 969, 975 ("The omission of a meritless claim . . . cannot constitute deficient performance; nor can it have been prejudicial.").

ECF No. 9-5 at 14.  Murray reiterates his position that the OCCA's adjudication of Ground I was contrary to clearly established federal law or otherwise unreasonable as to the law or the facts and, thus, the OCCA's adjudication of this sub-proposition was likewise erroneous.  *See* ECF No. 4 at 55-56.

As noted, because the OCCA applied *Strickland*, Murray must establish the OCCA unreasonably applied *Strickland* or its decision rests on an unreasonable determination of the facts.  As explained above, the OCCA's

determination that Maker and Rabe's testimony regarding the serology results was not hearsay was not unreasonable.  Nor was the OCCA's determination unreasonable that even if the testimony was hearsay, it was harmless beyond a reasonable doubt.  Therefore, a fairminded jurist could agree with the OCCA that counsel's performance was not deficient for failing to object to the statements at issue.  *See Davenport,* 596 U.S. at 120.  Accordingly, habeas relief as to this sub-proposition is denied.

In all, OCCA's conclusions concerning each of Murray's ineffective assistance of counsel sub-propositions were reasonable under the AEDPA, and habeas relief as to this claim is denied.

## IV.    Ground 3:  Prosecutorial Misconduct

Murray's next claim for habeas relief is prosecutorial misconduct in violation of the Fourteenth Amendment.  ECF No. 4 at 57-63.  Murray alleges, "[d]uring closing arguments the prosecution choose [sic.] to denigrate and impugn defense counsel.  These arguments were improper."  ECF No. 4 at 57.  Further, "the prosecution also argued facts not in evidence."  ECF No. 4 at 58.

### A. The OCCA's Decision

The OCCA recognized these alleged instances of prosecutorial misconduct were not met with objection at trial.  *See* ECF No. 9-5 at 15.  Therefore, the OCCA reviewed for plain error.  ECF No. 9-5 at 15.  The OCCA first noted,

27

> This Court will not grant relief for prosecutorial misconduct unless, when viewed in the context of the entire trial, the misconduct rendered the trial fundamentally unfair such that the jury's verdict is unreliable. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("The relevant question is whether the prosecutors' [misconduct] so infected the trial with unfairness as to make the resulting conviction a denial of due process.")[.]

ECF No. 9-5 at 14-15. The Court then addressed each contention:

> First, Appellant argues that the prosecutor's "when you don't have the facts and you don't have the evidence you bang the podium" remarks during closing argument denigrated defense counsel. Read in context, the prosecutor's comments were not attempts to cast aspersions on the defense. Rather, the comments were made in direct response to defense counsel's opening argument introducing Appellant to the jury and touting him as a moral, hardworking, educated, dedicated and loving husband and father, and arguing "[t]hat is what the evidence in this case is going to be about." In light of this argument, the prosecutor was simply asking the jury to "look[] at the facts" and not be lead astray by the defense's portrayal of Appellant. The prosecutor's comments fall within the wide range of permissible argument afforded both parties. *See Chadwell*, 2019 OK CR 14, ¶ 10, 446 P.3d at 1247; *See Warner v. State*, 2006 OK CR 40, ¶ 182, 144 P.3d 838, 889.

> Second, Appellant complains that the prosecutor argued facts not in evidence with respect to the rape kit swabs. The prosecutor's challenged comments were made in direct response to defense counsel's argument regarding the testimony of the SANE nurse, Kathy Bell, and did not improperly imply "the rape kit swabs had been tested or otherwise that any test results had been obtained from such swabs." The prosecutor's challenged argument represented reasonable argument based on the evidence presented at trial. *See Chadwell*, 2019 OK CR 14, ¶ 10, 446 P.3d at 1247 ("Both sides have wide latitude to discuss the evidence and reasonable inferences therefrom.").

> There was no prosecutorial misconduct. Because there is no error, there is no plain error. Proposition III is denied.

ECF No. 9-5 at 15-16.  Murray alleges the OCCA's adjudication "was contrary to or an unreasonable application of federal law and/or otherwise based upon an unreasonable determination of the facts."  ECF No. 4 at 60.

### B. Analysis and Conclusion

"To prevail on a claim based on improper remarks by the prosecutor, a petitioner generally must demonstrate that the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Bland,* 459 F.3d at 1014 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974), and citing *Le v. Mullin,* 311 F.3d 1002, 1013, 1018 (10th Cir. 2002)).  A reviewing court evaluating a prosecutorial-misconduct claim must consider the alleged misconduct in the context of the "entire proceedings, including the strength of the evidence against the defendant."  *Hanson v. Sherrod*, 797 F.3d 810, 843 (10th Cir. 2015).

The OCCA correctly identified the controlling legal principle from *Donnelly* to evaluate Murray's allegations of misconduct.  *See* ECF No. 9-5 at 14.  The OCCA cited *Darden v. Wainwright*, for the proposition that reversible prosecutorial misconduct requires a showing that the prosecutors' comments rendered the trial fundamentally unfair such that the jury's verdict is unreliable.  *See* ECF No. 9-5 at 14.[5]  Thus, the OCCA's decision, as

---

[5]  The *Darden* Court cited to and relied on *Donnelly*.  *Darden*, 477 U.S. at 181.

to Murray's allegations of prosecutorial misconduct, was not contrary to clearly established federal law.

Murray contends the OCCA unreasonably applied the fundamental fairness test when it evaluated the alleged instances of misconduct. *See* ECF No. 4 at 60 ("The OCCA failed to conduct such a contextual review."). The Court disagrees. The OCCA explicitly noted it was considering the claim "viewed in the context of the entire trial[.]" ECF No. 9-5 at 14; *see also Hanson*, 797 F.3d at 843. The OCCA reviewed the context of both challenged comments and concluded they were permissible. *See id.* at 14-15. A review of the trial testimony reveals, as Murray acknowledges elsewhere in his briefing,[6] Murray's DNA on the victim's skirt was the physical evidence connecting Murray to the crime, not the victim's SANE exam or any results thereof.

Furthermore, there was strong evidence of Murray's guilt. Murray had the opportunity to commit the crime as he was admittedly at his house with A.T. during school hours. *See* ECF No. 10-8 at 57. Murray placed A.T. in his bed with his semen. ECF No. 10-8 at 64 (Murray testified he had sex with

---

[6] Murray alleged earlier in his Brief, "[h]ad counsel sought suppression of the buccal swab and Mr. Murray's resulting DNA profile, there exists a reasonable probability the district court would have suppressed the same. And, in turn, assuming the state did not dismiss for lack of evidence, there exists a reasonable probability Mr. Murray would have been acquitted of Count 2." ECF No. 4 at 54.

his wife and "came on the bed" the morning of the incident); *id.* at 54 (Murray testified he came home and found A.T. in his bed).  Murray's DNA was found on A.T.'s skirt and Rabe testified such a "strong" result would not occur from mere contact.  *See* ECF No. 10-7 at 66-68.  A.T. also testified concerning the relationship with Murray and how she thought he was her first love.  ECF No. 10-6 at 24-25.  Circumstantial evidence of photographs of A.T. and Murray corroborate the notion that Murray had an inappropriate relationship with A.T.  *See* ECF Nos. 10-4 at 80-81 and 10-12 at 2.  Viewing the challenged comments in the context of the entire proceedings, including the strength of the evidence against Murray, the Court cannot conclude the identified comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.

In all, the OCCA's decision was not an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  Therefore, habeas relief as to this claim is denied.

## V.    Ground 4:  Cumulative Errors

For his final claim, Murray alleges the accumulation of error in this case acted to deprive him of his constitutional rights.  ECF No. 4 at 63-64.

### A. The OCCA's Decision

The OCCA rejected this proposition of error.  The OCCA explained,

> This is simply not a case where numerous irregularities during Appellant's trial tended to prejudice his rights or otherwise deny him a fair trial. *Tryon*, 2018 OK CR 20, ¶ 144, 423 P.3d at 655. No substantive errors were found on appeal that affected Appellant's trial rights. Appellant's cumulative error claim is thus denied. *Tafolla v. State*, 2019 OK CR 15, ¶ 45, 446 P.3d 1248, 1263.

ECF No. 9-5 at 16-17. Murray contends, "the state court's determination of no error is contrary to and/or an unreasonable application of federal law, or is otherwise based upon a unreasonable determination of facts." ECF No. 4 at 63.

## B. Analysis and Conclusion

Habeas "petitioners are entitled to 'relief under [the] cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.'" *Andrew v. White*, 62 F.4th 1299, 1351 (10th Cir. 2023) (quoting *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013)), *cert. granted, judgment vacated on other grounds* 145 S. Ct. 75 (2025). To analyze a cumulative-error claim, a reviewing court "aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Simpson v. Carpenter*, 912 F.3d 542, 602 (10th Cir. 2018) (quoting *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002)). But "[o]nly actual constitutional errors are considered when reviewing a case for cumulative

32

error." *Id*. As detailed above, Murray has not established the existence of any constitutional errors. Therefore, no reasonable jurist could conclude the OCCA's rejection of the claim was contrary to or an unreasonable application of clearly established federal law. *See Wyatt v. Crow*, 812 F. App'x 764, 770 (10th Cir. 2020).[7] Nor has Murray demonstrated the OCCA's decision rested on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Murray's request for habeas corpus relief on this claim is denied.

### *CONCLUSION*

The Court finds and concludes Murray has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. § 2254. The Court therefore denies the Petition as to all four claims raised therein. The Court further concludes that no certificate of appealability shall issue because reasonable jurists would not debate the correctness of this Court's assessment of Murray's constitutional claims. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that the Petition [ECF No. 2] is **denied**; a certificate of appealability is **denied**; and a separate judgment shall be entered in this matter.

---

[7] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

**IT IS FURTHER ORDERED** that the Clerk of Court shall note on the record the substitution of David Louthan, Warden, in place of Deon Clayton as party Respondent.

**IT IS SO ORDERED** this 3rd day of September, 2025.

Sara E. Hill
UNITED STATES DISTRICT JUDGE